## STREET RAILWAYS—MUNICIPAL CORPORATIONS—CONSENTS.

[Cuyahoga (8th) Circuit Court, November 28, 1904.]

Hale, Marvin and Winch, JJ.

### A. J. DAY v. FOREST CITY RAILWAY ET AL.

1. CONSENTS OF ABUTTING PROPERTY OWNERS TO CONSTRUCTION OF STREET RAILWAY.

    The statutes seem to make a marked distinction between original grants for the *construction* of new street railways and grants for the *extension* of the tracks of old street railways; hence it follows that the abutter has a right to consent, or withhold his consent, either to the construction of a new railway or to the extension of the tracks of an old railway. If the abutter consent to the *construction* of a railway, either generally, or specifying some particular individual or corporation who may have his consent to construct, his consent inures to the benefit of the individual or corporation offering to carry passengers at the lowest rate of fare; if he consent to the *extension* of the tracks of an existing street railway, such consent inures only to the benefit of the railway specified in his consent. This conclusion is based not only upon said distinction in the statutes, but upon principle.

2. CONSENTS TO CONSTRUCTION OF STREET RAILWAY ON PENDING APPLICATION FOR GRANT MAY BE CONSIDERED ON SUBSEQUENT APPLICATION, WHEN.

    Where consents to the construction of a street railway are given while application for a grant is pending and the municipal authorities are enjoined from making such grant, and thereafter, and within a year, a new application is made for the right to construct a street railway on the same street, which application is granted and an ordinance therefor passed, such original consents are not *functus officio*, but may be considered by council as consents to the latter grant, if presented to council as such, it appearing that said abutters had knowledge of the new application and never withdrew their consents.

3. RIGHT OF VENDEE OF ABUTTING LAND UNDER CONTRACT TO CONVEY TO CONSENT.

    Where the vendee of land under a contract to convey it is not in default under his contract and is in possession of the land, which abuts upon a street upon which it is proposed to construct a street railway, the right to consent to the construction of such railway is in said vendee.

4. PURCHASER OF LAND SUBSEQUENT TO CONSENT BY FORMER OWNER BOUND THEREBY UNLESS REVOKED.

    Where the owner of land abutting upon a street has consented to the construction of a street railway upon said street, and the title to the land subsequently devolves upon another who has knowledge of said consent, but never revokes it, the latter is bound by the consent.

5. KNOWLEDGE OF GUARDIAN DOES NOT BIND GUARDIAN.

    The mere knowledge of a guardian that the person from whom his ward derives title has so consented and neglect of the guardian to revoke it, does not bind the ward.

6. CONSENT FOR OWNER BY ANOTHER BINDING IF INTENDED BY FORMER AS SUCH.

    A consent signed for the owner by another, whether the name signed be that of the owner or such other, is the consent of the owner, if intended by the owner as such. Such intention may be gathered from authorization previously given by the owner or ratification or adoption after signing

Day v. Railway.

7. AGENCY MUST BE PROVED IF SUFFICIENCY OF CONSENTS IS ATTACKED.

>Where a person signs a consent as agent for another, no presumption in favor of the agency arises from the rule that council is presumed to have acted with sufficient consents before it; and, in an action in which the jurisdiction of council to grant a street railway frachise is attacked on the ground that it did not have sufficient valid consents before it, such agency must be proved as in other cases.

8. CONSENTS REQUISITE TO GIVE COUNCIL JURISDICTION TO GRANT STREET RAILWAY FRANCHISE.

>The council of a municipal corporation has no jurisdiction to pass an ordinance granting a franchise to construct a street railway in a street of such corporation unless, before the passage of such ordinance, there are produced to council the written consents of the owners of more than one-half of the feet front of the lots and lands abutting upon said street.

APPEAL.

**Wilcox, Collister, Hadden & Parks,** for plaintiff.
**Blandin, Rice & Ginn,** for defendants.

## WINCH, J.

This case was heard on appeal. We are asked to enjoin the defendants from constructing and operating a street railway on Denison avenue, between Pearl street and the westerly limits of the city of Cleveland under an ordinance granting such franchise to them as an original grant, passed by the council of said city, September 9, 1903. It is said that said council was without jurisdiction to pass said ordinance, and that the same is null and void because before its passage there were not produced to the council the written consents of the owners of more than one-half of the feet front of the lots and lands abutting upon said Denison avenue between the limits stated.

This is the sole question presented to us for determination in this case.

An agreed statement of facts has been submitted which shows that there is private frontage on that portion of Denison avenue in controversy amounting to 28,638.66 feet. The plaintiff claims that to this frontage should be added certain property owned by the Big Four Railway Company, amounting to 154.65 feet. The evidence shows that said railway company owns said land in fee, though a small part of it is covered by its tracks. We see no reason why this railway company property should not be counted in making up the total of the frontage on the street and therefore find that, including said property, the private frontage on the street is 28,793.31, and that the validity of the ordinance depends upon whether the written consents of the owners of a majority of said frontage, to wit, 14,397 feet, were produced to the council as aforesaid.

Cuyahoga County.

The agreed statement of facts contains a list of owners and their frontages, who did not give their consent. This amounts to 10,837.938 feet, and starting with these figures we have examined the contested frontgages, and in this opinion will state as concisely as possible our findings of facts and conclusions of law upon each one of them, in the order that they are set forth in defendants' memoranda of disputed frontages.

1. Mary C. Lemmerman, 54.6 feet. Consent was signed by her husband for her and we find that he was authorized so to do and that the consent should be counted for defendants.

2. William R. Long, 277.19 feet. Consent signed August 22, 1903, contained the following provision: "This consent holds good only if franchise is passed on Monday, August 24, 1903." It appears that the ordinance was not passed on that date, and we hold that it was of no validity thereafter, and this frontage is counted as not consenting.

3. Regina Hafele, 110 feet. The evidence shows that this property was formerly owned by one Elizabeth Pletcher. She signed a consent, while owner. July 3, 1903, she sold and conveyed the property to Regina Hafele. It does not appear that the latter knew of this outstanding consent until after the ordinance was passed. This frontage is counted as not consenting.

4. Jennie Cleveland, 49.68 feet. Lucius W. Baker formerly owned this property and signed a consent. June 27, 1903, he conveyed it to Jennie Cleveland. She did not know of the outstanding consent until November 16, 1903. This frontage is counted as not consenting.

5. Flora L. McIntire, 59.38 feet. Consent signed, "Flora McIntire by D. C. McIntire," her husband. He had no authority to sign for her and she new nothing of his signing her name until long after the ordinance was passed. Counted as not consenting.

6. Lucy B. Winslow and Annie L. Chadwick, 575.34 feet. The owners had been in Europe for some time. Their interests here were looked after by N. M. Platt. He had no power of attorney from them and never consulted them about their wishes in the premises, but signed a consent for them. Of this they had no knowledge until December, 1903, when they promptly disaffirmed his act. Counted as not consenting.

7. Barbara Canda, 108.06 feet. Consent signed August 24, 1903, "Barbara Canda by John Canda, agent." John was Barbara's son, and from the evidence we find that he was authorized to sign for her and count this frontage in favor of the ordinance.

Day v. Railway.

8.   George Fleisher, 209.59 feet.   From the evidence it appears that on August 19, 1903, George Fleisher signed a consent reading as follows:

"The undersigned property owner hereby consents to the construction of a double track street railroad on Denison avenue for all the property standing in my name."

August 24, 1903, he signed a writing as follows:

"I, the undersigned, being the owner of property to the extent of 210.59 feet upon Denison avenue in the city of Cleveland, hereby withdraw and cancel any and all consents which I have heretofore given for the construction of any other street railroad except the Cleveland Electric Railway Company upon said street."

These two documents were in the hands of Peter Witt, clerk of the city of Cleveland, and he had them with him in the council chamber when he presented to the council a written communication as follows:

"September 9, 1903.

"To the City Council.

"Gentlemen:   I have examined the consents for the construction of the double track street railway on Denison   avenue,   presented   by Albert E. Green, and find that the same represents a majority of the feet fronting on Denison avenue.

"Respectfully yours,

"PETER WITT, City Clerk."

The council acted upon this communication and did not itself, or by committees, examine the consents.   Mr. Witt testifies that he did not count the Fleisher frontage in favor of the ordinance.   The question presented is whether the council should have counted said frontage as consenting.

Testimony was admitted, over the objection of defendants' showing that the Cleveland Electric Railway Company was, prior to the passage of the ordinance in question, operating a street railway in the city of Cleveland, under a franchise granted by the council of said city.   That on July 27, 1903, it filed with the city council an application for leave to extend its tracks on Denison avenue, the street here in question.   This ordinance went to its second reading on August 17, 1903, and was then, and for some time after, pending before the council.

August 3, 1903, George Fleisher signed and delivered to an agent of said company the following writing:

"I, the undersigned, being the owner of property on Denison avenue in the city of Cleveland, to the extent of 210.59 feet front, hereby request the Cleveland Electric Railway Company to construct an exten-

sion of its existing street railway lines upon and along said street in front of my premises, and to maintain and operate the same as a part of its system of street railway now in operation in the city of Cleveland.

"This request is made as a personal request, and to the said Cleveland Electric Railway Company only, and I consent to the construction and operation of such an extension of said company's lines upon and along said street; but this consent shall not be assignable, and is not intended as authority for any other street railroad to be constructed and operated upon said street."

For a satisfactory determination of the question here involved, it is necessary to consider the statutes regulating the granting of street railway franchises.

Laning R. L. 5520 (R. S. 3437) provides that street railways "may be constructed or extended."

Laning R. L. 3763 (B. 1536-183) provides that: "The right so to construct or extend such railway as is provided for in Sec. [Lan. 5520] 3437 Rev. Stat., within or beyond the limits of a municipal corporation can be granted only by the council thereof, by ordinance * * * ; and that no extension of any street railroad located wholly without any such city, or of any street railroad wherever located, which has been built or shall be built in pursuance of a right obtained from any source or authority other than a municipal corporation, shall be made within the limits of such city, except as a new route, and subject to the provisions of Sec [Lan. 3767] 2501 Rev. Stat., and Sec. 30 [Lan. 3764; B. 1536-185] of this act."

The foregoing provisions seem to make a distinction between the "construction" and "extension" of street railroads, and following up the provisions on the subject, we further find it provided for the *construction* of new railroads as follows:

Laning R. L. 3767 (B. 1536-184; R. S. 2501). "No corporation, individual or individuals shall perform any work in the construction of a street railroad, until application for leave is made to the council in writing, and the council by ordinance shall have granted permission," etc.

Laning R. L. 3764 (B. 1536-185). "Nothing mentioned in Sec. 2501 Rev. Stat., shall be done; no ordinance or resolution to establish or define a street railroad route shall be passed, and no action inviting proposals to construct and operate such railroad shall be taken by the council; and no ordinance for the purpose specified in Sec. 2501 Rev. Stat., shall be passed until public notice of the application therefor has been given by the clerk of the corporation * * * for the period of at least three consecutive weeks in one or

more of the daily papers, * * * and no such grant as mentioned in Sec. 2501 Rev. Stat., shall be made, except to the corporation, individual or individuals, that will agree to carry passengers upon such proposed railroad at the lowest rates of fare, and shall have previously obtained the written consent of a majority of the property holders upon each street or part thereof, on the line of the proposed street railroad, represented by the feet front of the property abutting on the several streets along which such road is proposed to be constructed.''

With regard to the extension of tracks by existing street railroads it is provided:

Laning R. L. 3770 (B. 1536-188; R. S. 2505). ''The council of any city or village may grant permission, by ordinance, to any corporation, individual, or company owning, or having the right to construct, any street railroad, to extend their track, subject to the provisions of Sec. 3437, 3438, 3439, 3440, 3441, 3442 and 3443, on any street or streets where council may deem such extension beneficial to the public; and when any such extension is made, the charge for carrying passengers on any street railroad so extended, and its connections made with any other road or roads, by consolidation under existing laws, shall not be increased by reason of such extension or consolidation.''

A provision common to both construction and extension is the following:

Laning R. L. 5521 (R. S. 3439). ''No such grant (for the construction or extension of a street railroad) shall be made until there is produced to council * * * the written consent of the owners of more than one-half of the feet front of the lots and lands abutting on the street or public way, along which it is proposed to construct such railway or extension thereof; and the provisions of Secs. 2501 and 2503 to 2505 inclusive, so far as they are applicable, shall be observed in all respects, whether the railway proposed is an extension of an old or the granting of a new route,'' etc.

A marked distinction is thus drawn between an original grant for construction and a grant for an extension of a street railroad. In the former case a grant can be made only upon publication of notice of the pendency of an application and then to the company offering to carry passengers at the lowest rate of fare; the grant of a right to extend tracks can only be granted to a company owning or having the right to construct a railroad, and there can be no bidding for the grant—the only provision for fare being that it shall not be increased by reason of such extension.

From this we conclude that the abutter has a right to consent or withhold his consent, either to the construction of a new road or to the extension of an old road. While it has been held with regard to a new road that a general consent, or even one specifying some company or individual, will inure to the benefit of the company or individual offering to carry passengers at the lowest rate of fare, we think it equally clear that a consent to the extension of an old road will inure only to the benefit of such old road.

This personal right of the property owner to designate whether his consent shall inure to the benefit of the lowest bidder for a new road or for the benefit of an old company seeking a right to extend its tracks, is not founded alone upon the distinctions shown to exist in the statutes, between new construction and extension; it has natural justice back of it. If the right to consent or withhold consent is a personal right, the property owner should be allowed to exercise it as he sees fit and as he deems to his best advantage. It may be considered by him a more desirable thing to have a street railroad in front of his property which will take him for five cents all over the city, than to have one with a three cent fare which only runs up and down the street for two or three miles and neither goes near his own place of business or that of others with whom he trades or desires to meet. On the other hand, if he prefers the new railroad, because of its lower fare, he should have a right to express his preference.

With these views of the law of the case we have admitted testimony as to the situation of the parties in order that we might determine the intention of George Flesher as expressed in his so-called withdrawal of consent dated August 24, 1903, and we hold that said instrument was a revocation of the general consent given theretofore and the exception therein contained referring to the Cleveland Electric Railway Company inures only to the benefit of the latter company in a proposed extension of its tracks along Denison avenue.

This frontage is counted as not consenting.

9. Carrie E. Rundell, 46 feet. Counted against the ordinance for reasons stated in No. 8.

10. Joseph H. Storer, 524.31 feet. Counted against the ordinance for reasons stated in No. 8.

11. Frank S. Pelton, 120.88 feet. Pelton filed a consent, but revoked it August 17, 1903. On September 9, 1903, he signed another consent, but the evidence shows that the last consent was not produced to council. Counted against the ordinance.

Day v. Railway.

12. Horatio B. Carpenter, 100 feet. Counted against the ordinance for reasons stated in No. 8.

13. The Union Savings & Loan Company, 93.33 feet. Consent was signed, "Union Savings & Loan Company, A. G. Hutchinson, secretary." Revocation was signed, "Union Savings and Loan Company, by H. Q. Sargent, president." Neither consent or revocation was authorized by the board of directors at a meeting regularly held, but we are satisfied that the several members of the board were consulted in each instance and that the revocation is as valid as the consent. Counted against the ordinance.

14. C. F. Brandt, 90.78 feet; Maria Peters, 155.00 feet; Michael J. Maher, 105.27 feet; Henry Maulberger, (1-2 of 35) 17.50 feet; John A. Dennerle, 138.18 feet; Nellie M. Noderer, 69.12 feet; Michael Froelich, (1-2 of 105) 52.50 feet; Ellen I. Sears, 414.75 feet; P. J. & Nettie Reilley, (1-2 of 50.8) 25.10 feet.

The only objection made to the above consents is that they were signed in 1902, about a year before the passage of this ordinance. At that time a similar ordinance was pending, but the Supreme Court enjoined the council of the city of Cleveland from granting any street railway franchises until after its reorganization under the new municipal code. Further proceedings with regard to the old ordinance were dropped and application for the present franchise was made after the reorganization of the city government.

We do not think these old consents were *functus officio,* as claimed by plaintiff. They were outstanding with full knowledge of the consenters and unrevoked. This conclusion is sustained by *Sanfleet* v. *Toledo,* 8 Circ. Dec. 711 (10 R. 460), affirmed by the Supreme Court without report. See also *State* v. *Henson,* 66 N. J. Law 601, 617 [50 Atl. Rep. 468, 616], and Nellis, Street Surface Rys. 81.

These frontages are counted as consenting.

15. The Frisbie Company and William and Minnie Stroh, land contractees, 41.96 feet. Title in the Frisbie Company, but William and Minnie Stroh in possession of the property under a land contract. Consent signed by the Frisbie Company and Mrs. Minnie Stroh, one of the contractees.

We hold, that where the vendee of land under a contract to convey it is not in default under his contract and is in possession of the land which abuts upon a street upon which it is proposed to construct a street railway, the right to consent to the construction of such railway is in said vendee.

### Cuyahoga County.

Applying this rule to this frontage, one of the vendees having consented and the other having failed to give consent, only half of the frontage can be counted in favor of the ordinance, and we therefore count one-half of 41.96 feet, or 25.98 feet against the ordinance.

16. The Frisbie Company and J. C. Buchler, land contractee, 42.06 feet. Both vendor and vendee signed consent. We see no reason why it should not be counted in favor of the ordinance.

17. Estate of Mrs. F. W. Pelton, 1765.70 feet. Susan A. Pelton was at one time the owner of this land, signed a consent and then died. The property descended to her two daughters, Lucy A. Wenham and Elizabeth Pelton. Elizabeth Pelton was an imbecile and after the mother's death, Lucy A. Wenham was appointed her guardian. Mrs. Wenham knew that her mother had signed a consent and approved of it. Having such knowledge she never revoked the consent..

We hold that where an owner of land has consented to the construction of a street railway and the title to said land subsequently devolves upon another who has knowledge of said consent, but never revokes it, the latter is bound by the consent. Under such holding it follows that the one-half of this property which Lucy A. Wenham inherited must be counted as assenting.

As to the one-half inherited by the imbecile daughter, it is conceded that had there been no outstanding consent, the guardian could not have consented for her ward without an order of the probate court authorizing such consent. The written consent, therefore, of the guardian, would have been of no avail, without an order from the probate court, and we are unable to see how the mere knowledge of the guardian of the former consent and the guardian's neglect to apply to the probate court for instructions regarding it, can alter the case. The one-half of this frontage, 882.85 feet, owned by Elizabeth Pelton, imbecile, is counted against the ordinance.

18. Estate of Frederick W. Pelton, one-third of 858.50, or 286.167 feet.

Frederick W. Pelton, husband of Susan A. Pelton, mentioned above, owned 858.50 feet, and by his will left one-third to his widow, Susan A. Pelton, and after his death she signed a consent. No consent was ever given for the two-thirds devised by Frederick W. to his daughters, Lucy Wenham and Elizabeth Pelton. The contention is, with regard to the one-third devised to the widow, which, by inheritance, upon her death passed the same as in No. 17, and the facts being the same in both cases, we count the one-half of this one-third, or 143.083 feet, inherited by the imbecile daughter, against the ordinance.

Day v. Railway.

19. Marie Reppennagen, 98.75 feet. This consent was withdrawn in the same manner as the Fleisher consent was withdrawn, and for the reasons stated in that case, this frontage is counted against the ordinance.

20. James Sears' Estate, 1086.502 feet. Counted against the ordinance for reasons stated in No. 8.

21. Congregational city missionary society, 77.14 feet. Consent signed, "Congregational Church, by the authority of trustees, John G. Simon." The society first mentioned, an incorporated body, owned the property. The "Congregational church" whose signature purports to be affixed by Simon, occupied the church under some arrangement with the incorporated society, but had no title to the property. Simon was not an officer of the incorporated society and had from it no authority to sign the consent. Counted against the ordinance.

22. Frieda Schwartz Schweiger, 51.025 feet. Consent signed, "A. Schweiger," by her husband, Adolph Schweiger. The proof shows that the owner authorized her husband to sign for her, and we hold the consent should be counted in favor of the ordinance.

23. Big Four railway, 154.65. No consent was filed and this frontage is counted against the ordinance.

24. James Evans, 184.64 feet. Title to this property was originally in Mary A. S. Evans, wife of James Evans. She had conveyed the property to her husband, but his deed was not of record. The wife, with knowledge and consent of her husband, signed her own name to a consent. We count it in favor of the ordinance.

25. Orrin Wallace, one-fourth of 174.23, or 43.56 feet. Property owned in common by three brothers and a sister. Consent signed, "By authority, H. B. Wallace." Evidence shows H. B. Wallace was so authorized by one brother and the sister. He himself testifies that he also had such authority from his brother Orrin. This Orrin denies. We do not think an agency is proved by the declarations of the agent, when the principal denies the agency. The rule that the presumption is, that the council acted with sufficient consents before it, does not extend to the validity of any single consent when the validity of such consent is directly attacked. In the latter case the validity of the consent is to be determined as a fact, under the ordinary rules of evidence and applying them to this frontage we find that Orrin Wallace never consented, and this frontage is counted against the ordinance.

26. Ernst Schueneman, one-half of 45, or 22.5 feet. Ernst and Wilhelmina Schueneman owned the property, and the consent was

signed, "Mr. Ernst Wilhelmina Schueneman," by their daughter. 'It appears that she signed by direction of her mother; that her father was promptly informed of what she had done and never made any objection. Counted for the ordinance.

27. Katharine Ehrbar, 146.66 feet. Consent signed, "Katharine Ehrbar by F. C. Ehrbar." The latter was her husband. There is some doubt whether the signature was written by the husband or by a daughter, but there is no doubt that Katharine adopted the signature and consented.

28. George P. Geib, 410.16 feet. Two consents, one signed June 6, 1902, by Geib, and one signed August 5, 1903, by his son. No revocations. Following our holding as to No. 14, this frontage is counted as consenting.

29. Herman Stuhr, one-third of 129.44, or 43.18 feet. Annie L. Wertz owned the property, consented and died. The property descended to three heirs. Two of them signed consents. There is no evidence that the third heir, Herman Stuhr, had any knowledge that Mrs. Weitz had signed a consent and we therefore count this property against the ordinance.

30. Estate of Samuel and Susan B. Storer, four-fifths of 292.68, or 234.13 feet. There are five consents and withdrawals in this case. It is necessary to consider but three of them. Consent dated August 11, 1903, signed, "S. Storer's heirs, Mrs. Mabel Templin, executrix." We think the proof shows that all the heirs at this time consented and authorized Mrs. Templin to sign for them. On August 14, 1903, a revocation was signed, "Mrs. Mabel Templin, Mrs. Julia Storer," with the exception as to the Cleveland Electric Railway Company. Under our previous ruling we hold this to be a revocation as to the two owners who signed it. Mrs. Templin subsequently signed another consent. Mrs. Julia Storer did not, and we count her share, or 58.536 feet against the ordinance.

31. Marcus Dennerle; Marcus and Teresa Rohrbach, land contractees, 54.06 feet. Marcus Rohrbach signed a consent which was before the council, and under our ruling in No. 15 we count his half of this frontage in favor of the ordinance, but the one-half, 27.03 feet, belonging to his wife, who did not sign, we count against it.

32. Joseph and Margaretha Oeschger, Charles Burlinghausen, land contractee, 182.89. Charles Burlinghausen having signed a consent, under the ruling in No. 15 we count this frontage for the ordinance.

Day v. Railway.

33.  P. J. and Nettie Reilley, 25.1 feet.  Both owners signed a consent June 9, 1902, and for reasons before stated we count this for the ordinance.

34.  Bertha Maulberger, one-half of 35, or 17.5 feet.  Henry Maulberger and Bertha, his wife, owned the property in common.  Henry signed his own name to a consent.  There is no evidence that his wife authorized him to sign for her, and we count her half against the ordinance.

Summing up, we find that the frontage conceded as not consenting is 10,820.438 feet; the total of disputed frontages which we have concluded should be counted as not consenting, is 4,820.461 feet.  The two added together make 15,640.899 feet; a majority of the frontage on the street is 14,397 feet.  It appears that owners of more than half of the street frontage did not consent.  In other words, the written consents of the owners of more than one-half of the feet front of the lots and lands abutting on the street were not produced to council.  It was, therefore, without jurisdiction to pass the ordinance, and the same being of no validity, defendants have no rights under it and the prayer of the petition is granted.

**Hale, J.,** concurs.

**Marvin, J.,** dissents, as to ruling number eight only, and therefore dissents as to the judgment.